IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 20-cv-01896-NYW

LAUREANA LEDEZMA,

Plaintiff,

v.

YOUNG LIFE,

Defendant.

**FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
12/8/20
JEFFREY P. COLWELL, CLERK**

### PLAINTIFF'S REPLY TO DEFENDANT YOUNG LIFE'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Defendant Young Life makes little effort to hide the problematic ways it intends to use discovery into Laureana Ledezma's irrelevant past trauma as a weapon against her. While it may not be malicious, the biases and prejudices that Young Life seeks to introduce in this litigation are crystal clear and should not be permitted. From conferrals to hearings to briefings, Young Life has consistently indicated its intention to argue that Ms. Ledezma is unable to understand or appreciate "ordinary contact" with men because of her past trauma. [*See, e.g.*, ECF No. 14 at 11; ECF No. 29 at 10; ECF No. 35-1 at 13:22-14:3]. The implication is clear: women, and particularly women who have had previous traumatic experiences, cannot be trusted to know when they are being sexually harassed or what is happening to their own bodies. In other words, they inherently cannot separate fact from fiction, and the harassment is all a figment of their imagination. Plaintiff is aware of no scientific basis for this theory, and Defendant points to none. Permitting Defendant to interject such harmful stereotypes in federal litigation is oppressive not just to Ms. Ledezma but also has the well-recognized impact of deterring other victims of harassment from stepping forward.

1

## **LEGAL ANALYSIS**

### I. Ms. Ledezma's Past Trauma is Irrelevant to the Claims or Defenses

#### a. *Ms. Ledezma's Unrelated Past Trauma is Irrelevant to Young Life's Liability and Its Potential Defenses*

In its Response, Defendant's sole argument for why Ms. Ledezma's past trauma is relevant is that "Plaintiff told [witnesses] that her past [trauma] may form a useful context for Plaintiff's conduct and allegations in the Complaint."[1] [ECF No. 29 at 5]. From this vague assertion, it is not immediately clear what "conduct" Defendant alludes to, but the thrust of the argument seems to imply that Ms. Ledezma, not her harassers, may have acted improperly as a result of her prior trauma. Furthermore, given Defendant's other statements to date, the "context" referred to is unquestionably Ms. Ledezma's "oversensitivity" to interacting with men giving rise to fictitious sexual harassment claims. Neither of these purported explanations overcomes the requirement found in Rule 26 of the Federal Rules of Civil Procedure that discovery must be relevant to any party's claim or defense. Limiting discovery is indeed required when "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed.R.Civ.P. 26(b)(2)(C)(iii). The relevancy of Ms. Ledezma's past trauma is not immediately apparent, and other than the objectionable reasons set forth and contested by Ms. Ledezma, Young Life has not articulated any other explanation for how such discovery is relevant to the claims and defenses in this lawsuit.

Similarly, Young Life does not point to which fact(s) Ms. Ledezma's past trauma makes more or less probable either. It simply states that it is "useful context" for the allegations in the Complaint, of which there are 265. Given how invasive and oppressive the discovery sought is,

---

[1] Given that Young Life has categorically denied that Ms. Ledezma ever told anyone at Rocky Creek Ranch about the harassment she experienced, *see* [ECF No. 22 at ¶¶ 55, 76-78, 87, 100], it is unclear how Ms. Ledezma simultaneously failed to report the harassment, but also explained to witnesses that her trauma somehow informed the allegations in the Complaint.

relevance should go beyond mere speculative context. *See Zvelo, Inc. v. SonicWALL, Inc.*, No. 06-cv-00445-PAB-KLM, 2013 WL 2338352 (D. Colo. May 29, 2013) ("[W]hen relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request."); *McCall v. Skyland Grain, LLC*, No. 08-CV-01128-PAB-BNB, 2009 WL 1203304, at *5 (D. Colo. Apr. 29, 2009) (same). Indeed, Young Life cites to no legal authority providing that defendants are permitted to such invasive irrelevant discovery. It instead distinguishes itself from the defendant in *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1292-93 (8th Cir. 1997), by stating that it is not engaging in a "scorched earth defense." Regardless of which litigation tactics it elects to use, the principle nonetheless still applies: the discovery there, like the discovery here, was entirely irrelevant and overly invasive, delving as it did into the plaintiffs' personal lives. The court therefore found that discovery into such topics should not have been allowed. *Id.* at 1292-93.

    b. *Ms. Ledezma's Past Trauma is Irrelevant to Ms. Ledezma's Damages*

Again, without citing to legal authority, Young Life argues that the "eggshell skull" principle does not apply because it may "explore Plaintiff's own statements about the events in question." [ECF No. 29 at 5]. However, as stated in the Rule 16 scheduling conference, Young Life argued that Ms. Ledezma's past trauma caused her to "be a little more sensitive to being in a tight space." [ECF No. 35 at 3]. That is precisely the type of argument that is precluded under the "eggshell skull" principle. *See Jenson*, 130 F.3d at 1295 (gathering cases and noting that damages are not limited "against a tortfeasor for harm caused to a plaintiff who happens to have a fragile psyche").

Young Life compares apples to oranges by citing to *Moore v. Miller*, No. 10-cv-651-JLK, 2013 WL 2456114, at *2 (D. Colo. June 6, 2013), for the proposition that discovery is "particularly broad" when a plaintiff alleges emotional distress. There, the court was asked to interpret the scope

3

of its previous order granting a motion to compel discovery of the plaintiff's Facebook account. *Id.* There was no dispute that the discovery request for Facebook history was relevant, and there were no arguments that it was invasive or might cause irreparable harm. *See generally id.* That is not the case here, where Ms. Ledezma has demonstrated the discovery's irrelevance and its oppressive nature. What is more, courts are in agreement that "when a plaintiff asserts a claim of sexual harassment, the parameters of discovery have long been narrowed by the courts' interest in guarding against attempts to 'harass, intimidate, and discourage the plaintiff in her efforts to prosecute her cause.'" *T.C. on Behalf of S.C. v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, No. 3:17-CV-01098, 2018 WL 3348728, at *8 (M.D. Tenn. July 9, 2018) (quotation omitted).

To the extent the Court finds that statements Ms. Ledezma made at camp are relevant, Young Life can simply ask her about those statements during her deposition. Though Young Life accuses Ms. Ledezma of attempting to dictate their discovery methods, [ECF No. 29 at 6], courts routinely issue protective orders when discovery is irrelevant, harassing, or oppressive, and Defendant is free to ask Ms. Ledezma about her past trauma and how it may have impacted her perception of events without further troubling her personal family life. *See Meeker v. Life Care Centers of Am., Inc.*, No. 14-CV-02101-WYD-NYW, 2015 WL 5244947, at *2 (D. Colo. Sept. 9, 2015) (considering whether discovery "may be obtained from some other source that is more convenient, less burdensome or less expensive"). Ms. Ledezma's family members have no knowledge about the harassment Ms. Ledezma suffered, nor are they able to speculate about how it impacted Ms. Ledezma. Given the burden of requiring Ms. Ledezma's family members to attend a deposition to revisit past *irrelevant* trauma, the Court may appropriately consider whether Young Life can obtain the information it seeks from Ms. Ledezma herself.

## II. Ms. Ledezma Has Demonstrated Good Cause That Warrants the Issuance of a Protective Order

Defendant argues Ms. Ledezma is speculating what harm will come to her if discovery is permitted into her past trauma. This is clearly not so. Ms. Ledezma articulated precise and clearly defined injuries that would result from Young Life introducing the harmful hysterical female stereotype into this litigation and forcing Ms. Ledezma's family members to be deposed. Specifically, permitting Young Life to draw on such stereotypes prejudices her ability to obtain a fair trial in which her claims would be decided on their merits; sends the message to other victims of harassment that every aspect of their private lives will be exploited if they seek to vindicate their rights; and needlessly rips apart family relationships and imposes unnecessary emotional distress onto Ms. Ledezma and her family. [ECF No. 35, at 12, 16-17].

As such, Ms. Ledezma submitted plenty of evidence that warrants a protective order, and the cases Defendant cites are entirely inapposite. [*See* ECF No. 29 at 6-7]. In one, for example, the court refused to issue a protective order because plaintiff argued that it would be harassing and intimidating to continue her deposition beyond a "reasonable time" and have opposing counsel present in the room when documents were read to her because of a vision impairment. *Horsewood v. Kids R Us*, No. CIV. A. 97-2441-GTV, 1998 WL 526589, at *3 (D. Kan. Aug. 13, 1998). There was nothing in *Horsewood* referring to or discussing any past trauma or any other topic that is facially destructive. In the other, ***the defendant*** church sought a protective order to prevent discovery into its investigation of the plaintiff's complaints of sexual harassment. *Dolquist v. Heartland Presbystery*, No. Civ.A. 032150KHVDJW, 2004 WL 624962, at *2 (D. Kan. Mar. 9, 2004). Again, the discovery at issue had nothing to do with the plaintiff's private life. Further, there was no argument that defendant's investigation into the plaintiff's claims of sexual harassment during her employment was irrelevant to the claims and defenses in the case; the only

questions were whether the church autonomy doctrine or clergy-communication privilege applied. *Id.* at *2-*3. Neither of the cases Defendant cites stand for the proposition that a defendant is entitled to invasive and unnecessary discovery into the unrelated private life of a plaintiff.

Defendant further argues that a protective order is not warranted here because there are other procedural mechanisms Ms. Ledezma can rely on throughout the discovery process, including objections to discovery requests and deposition questions, as well as confidentiality designations pursuant to a protective order. Defendant has already demonstrated that the latter will not sufficiently protect Ms. Ledezma, as it filed its Response unrestricted *notwithstanding* the operative Protective Order in this case. And given the irrelevance of the information and harm of subjecting Ms. Ledezma and her family to depositions and other discovery for the purpose of seeking information into her past irrelevant trauma, a protective order is appropriate here.

### III. Young Life Has Evidenced an Improper Motive for Seeking Discovery About Ms. Ledezma's Past Trauma

Defendant suggests that Ms. Ledezma relies on "speculation and conjecture as to Young Life's motive for seeking discovery" about her past trauma. [ECF No. 29, *Response*, at 1]. Yet, Defendant has regularly articulated precisely how it intends to use such discovery. The purpose of doing so, it explained at the Rule 16 hearing, is to show how "her past trauma could potentially inform her current perception of events." [ECF No. 35-1, *Redacted Rule 16 Hearing Transcript*, at 13:22-23]. It has already also alerted the Court that it intends to retain an expert on the "psychiatric sequelae of" past trauma. [ECF No. 14, *Scheduling Order*, at 11]. In other words, Defendant intends to exploit the patina of science to perpetuate harmful gender stereotypes by hiring an expert to explain Ms. Ledezma's current harassment claims as "an aftereffect of a disease, condition, or injury" from her past, *i.e.*, as a result of her earlier trauma. *See Sequela*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/sequela?utm_campaign=sd&utm_m

edium=serp&utm_source=jsonld, (last visited Dec. 4, 2020). In no uncertain terms then, Young Life explained its motive for seeking the discovery. And it continues to make clear that it seeks to paint Ms. Ledezma as nutty so that it can argue her sexual harassment and assault claims are untrue. Young Life should not be permitted to interject these kinds of harmful stereotypes about female victims into litigation. *Cf. EEOC v. Jetstream Ground Servs., Inc.*, No. 13-cv-02340-CMA-KMT, 2014 WL 7650933, at *2 (D. Colo. Dec. 9, 2014) (noting that "there is a very dangerous precedent" in permitting expert testimony insinuating that plaintiffs should be disbelieved by virtue of their immutable characteristics).[2] Plaintiff is not speculating about Defendant's motive, and given that motive, a protective order is warranted here.

### IV. The Psychotherapist-Patient Privilege Should Apply to Ms. Ledezma's Case Because She Has Not Placed Her Mental Condition at Issue

Defendant contends that the law in the Tenth Circuit is "well-settled" and "dictates that Plaintiff waived any privilege by claiming emotional distress damages." [ECF No. 29 at 8]. However, since the Supreme Court decided *Jaffee v. Redmond*, 518 U.S. 1 (1996), the seminal case on the psychotherapist-patient privilege, the Tenth Circuit has never had a meaningful opportunity to define the specific contours of the privilege. *See Michaels v. Youth Servs. for Okla. Cnty., Inc.*, No. CIV-18-610-SLP, 2019 WL 3225893, at *3 (W.D. Okla. July 17, 2019) (noting that "the Tenth Circuit does not appear to have spoken as to this issue post-*Jaffee*" and discussing the approaches other courts have taken). The unpublished opinion Defendant relies upon involved a pro se plaintiff who argued that the defendant discriminated against her because of her perceived

---

[2] Presumably, Young Life intends to paint the picture that Ms. Ledezma is nutty to call into question her credibility, which is also not permitted. *See EEOC v. Jetstream Ground Servs., Inc.*, No. 13-cv-02340-CMA-KMT, 2014 WL 7650933, at *2 (D. Colo. Dec. 9, 2014) ("Expert testimony which does nothing but vouch for or attack the credibility of another witness . . . encroaches on the jury's vital and exclusive function.").

7

emotional instability. *See Fisher v. Sw. Bell Tel. Co.*, 361 Fed. App'x 974, 976 (10th Cir. 2010). The plaintiff brought several claims of error, including that the district court erred in allowing the defendant access to her psychotherapist records, which the Tenth Circuit swiftly rejected. *Id.* at 978. As other district courts have recognized, the Tenth Circuit has never had to meaningfully consider, post-*Jaffee*, whether it agrees with the majority view that asserting garden variety emotional distress damages does *not* waive the privilege. As such, courts within this circuit have recognized that claiming garden variety emotional distress damages may not waive the psychotherapist-patient privilege. *See Michaels*, 2019 WL 3225893 at *3; *Kear v. Kohl's Dep't Stores, Inc.*, No. 12-CV-1235-JAR-KGG, 2013 WL 3088922, at *3 (D. Kan. June 18, 2013) (noting that garden variety emotional distress damages may "prevent disclosure of information protected under psychotherapist-patient privilege"). This Court can and should consider the appropriate approach to waiving the psychotherapist-patient privilege, keeping in mind that Ms. Ledezma's past trauma is of such nominal relevance to the claims and defenses or damages in this suit as to not justify wholesale discovery.

Nonetheless, even if Ms. Ledezma waived the psychotherapist-patient privilege, the waiver should be limited in scope, particularly because she is seeking garden variety emotional distress damages. *See Fisher*, 361 Fed. App'x at 978 (permitting discovery of therapy records); *Fox v. Gates Corp.*, 179 F.R.D. 303, at 306-07 (D. Colo. 1998) (permitting time limited discovery of therapy records); *LeFave v. Symbios, Inc.*, No. CIV.A. 99-Z-1217, 2000 WL 1644154, at *4 (D. Colo. Apr. 14, 2000) (same). Young Life should not have free reign to depose Ms. Ledezma's therapist or discover all of Ms. Ledezma's mental health records. In the very least, her discovery of her records should be limited in scope temporally and substantively to emotional distress resulting from the harassment and assault she suffered.

### V.   Any Information Sought Regarding Ms. Ledezma's Sexual History is Presumptively Barred Under Fed. R. Evid. 412

For the first time in this litigation, Defendant suggests that it intends to seek discovery into Ms. Ledezma's history of "harmful contact with males." [ECF No. 29 at 1]. It is unclear what harmful contact with which males Defendant is referring to, and several attempts by Plaintiff's counsel to confer have unfortunately failed to result in any meaningful clarification. *See* **Ex. 1**, *2020.11.29-2020.12.03 Email*. But to the extent that Defendant intends to delve into her other sexual relationships, Ms. Ledezma also argues that Fed.R.Evid. 412 categorically precludes such discovery. Rule 412 states that "evidence offered to prove that a victim engaged in other sexual behavior" is inadmissible. Thus, evidence of a plaintiff's lifestyle, sexual behavior, predisposition, non-workplace sexual conduct, and information with sexual connotations is irrelevant and presumptively inadmissible at trial. *Truong v. Smith*, 183 F.R.D. 273, 274-75 (D. Colo. 1998) (presumptively inadmissible); *Socks-Brunock v. Hirschvogel Inc.*, 184 F.R.D. 113, 118-19 (S.D. Ohio 1999) (same). Indeed, the Advisory Committee Notes (1994) on Fed.R.Evid. 412 state that the purpose of doing so is to forgo embarrassment of victims and to avoid a chilling effect:

> The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders[.]

As a result, "courts should enter appropriate orders pursuant to Fed.R.Civ.P. 26 (c) to protect the victim against unwarranted inquiries and to ensure confidentiality . . . [and] should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery." *Id.*; *Williams v. Bd. of*

9

*Cnty. Comm'rs*, 192 F.R.D. 698, 704 (D. Kan. 2000). Further, the proponent of such discovery must establish relevance and that the value of the evidence sought substantially outweighs the danger of harm or prejudice to the victim. *Truong*, 183 F.R.D. at 274. Defendant has made little effort to articulate the possible relevance of Plaintiff's alleged "harmful contact with males." It is thus unable to satisfy its Rule 412 burden, particularly given that it is using Ms. Ledezma's past "harmful contact with males" to insinuate that she is dramatizing otherwise "ordinary contact" with men. Doing so is not only forbidden under Rule 412, but it should also be prohibited for the same public policy reasons as Ms. Ledezma's past trauma.[3]

## VI. Conclusion

In attempt to detract from the material facts in this case, Young Life seeks wide-reaching discovery into Ms. Ledezma's past trauma. If allowed, the result will taint not only the judicial process with the introduction of dangerous, debunked stereotypes, but will exact a needless, heavy toll on Ms. Ledezma and her family. Young Life has pointed to no scientific support for its psychoanalytic theory, only further raising red flags that what girds it is prejudicial stereotypes, and nothing more. Given the toll on Ms. Ledezma and her family, and the important public policy considerations at stake, Young Life should be precluded from engaging in such discovery and a Fed.R.Civ.P. 26(c) protective order should be issued.

---

[3] In any event, given that Young Life has not provided any context into the "improper" and "harmful" contact it refers to, it is difficult to further address the matter here, and is perhaps better left for another day. If the Court is not inclined to issue a protective order based on the facts before it, the Court should order Defendant to disclose with more specificity the nature of the intended discovery so that the parties can confer and engage in this Court's dispute resolution procedures if no agreement can be reached.

Dated this 4th day of December 2020.

*s/ Ellen K. Giarratana*
Ellen K. Giarratana
Iris Halpern
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence Street, Ste 100
Denver, Colorado 80205
303-578-4400 (t)
303-578-4401 (f)
eg@rmlawyers.com
ih@rmlawyers.com

11